```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA


LINDA ANDREWS,                    )   No. EDCV 08-0658-RC
                                  )
         Plaintiff,               )
                                  )   OPINION AND ORDER
    v.                            )
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
         Defendant.               )
_____)
```

Plaintiff Linda Andrews filed a complaint on May 23, 2008, seeking review of the Commissioner's decision denying her application for disability benefits, and on October 17, 2008, the Commissioner answered the complaint. On December 29, 2008, the parties filed a joint stipulation.

**BACKGROUND**

**I**

On January 25, 2005 (protective filing date), plaintiff filed an application for disability benefits and disabled widow's benefits under Title II of the Social Security Act ("Act"), claiming an

inability to work since September 28, 2003.  Certified Administrative Record ("A.R.") 78-81.  The plaintiff's application was initially denied on December 19, 2005, A.R. 35-39, and was denied again on March 16, 2006, following reconsideration.  A.R. 43-48.  The plaintiff then requested an administrative hearing, A.R. 51, which was held before Administrative Law Judge John W. Belcher ("the ALJ") on September 11 and December 18, 2007.  A.R. 418-80.  On January 23, 2008, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 9-22.  The plaintiff appealed the decision to the Appeals Council, which denied review on April 29, 2008.  A.R. 5-8.

**II**

The plaintiff was born on January 22, 1952, and is currently 57 years old.  A.R. 79, 425.  She has a high school education, completed two or three years of college, A.R. 300, 351, 428, and previously worked as a receptionist, a data entry clerk, a hand packer and a certified nurses' assistant.  A.R. 130-37, 165, 460-65.

Between May 7, 2002, and January 13, 2005,[1] plaintiff received mental health treatment at Kaiser Permanente, where she was diagnosed with depression, not otherwise specified, and prescribed Trazodone and Zoloft.[2]  A.R. 193-206.  On June 6, 2004, plaintiff was treated in the

---

[1] Although plaintiff has both physical and mental complaints, plaintiff challenges only the ALJ's assessment of the medical evidence relating to her mental complaints.

[2] Trazodone, also called Desyrel, "is prescribed for the treatment of depression." The PDR Family Guide to Prescription Drugs, 198, 690 (8th ed. 2000).  Zoloft "is prescribed for major depression — a persistently low mood that interferes with

emergency room at St. Mary Medical Center, where Franz Bolowich, M.D., diagnosed her with major depression, treated her with medication, and released her to return home.  A.R. 259-65.

Between June 12 and June 15, 2005, plaintiff was hospitalized at Arrowhead Regional Medical Center after having a cerebrovascular accident, which caused her to have right-sided weakness and numbness. A.R. 243, 327-29, 396-98.  On June 18, 2005, psychiatrist Ehab Hanna, M.D., examined plaintiff and attempted to conduct a comprehensive psychiatric evaluation; however, plaintiff cried throughout the interview, and Dr. Hanna could not test her cognitive abilities.  A.R. 235-39.  Nevertheless, Dr. Hanna diagnosed plaintiff as having a recurrent, severe, major depressive disorder, without psychotic features, and opined plaintiff's Global Assessment of Functioning ("GAF") was 20.[3]  A.R. 238.  Dr. Hanna also opined plaintiff was not able to accept instructions from supervisors or interact with coworkers or the public.  Id.  Dr. Hanna concluded plaintiff's condition was treatable and the likelihood of recovery was guarded, although her condition could slightly improve in the next twelve months.  Id.

//

---

everyday living."  Id. at 763.

[3] A GAF of 20 means "[s]ome danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e.g., largely incoherent or mute)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

On November 23, 2005, Kim Goldman, Psy. D., a clinical psychologist, examined plaintiff, administered psychological testing, and diagnosed her with malingering. A.R. 300-04. Dr. Goldman found plaintiff did not make an adequate effort on the tasks presented her, she "appeared to volitionally present herself with a severely deficient fund of information[,]" poor judgment and poor understanding of social convention, and the psychological test results were not valid because plaintiff did not make an adequate effort. A.R. 302-03.

On August 10, 2006, Samuel Wilson, M.D.,[4] opined plaintiff is extremely limited in her ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision, and markedly limited in her ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal

---

[4] Dr. Wilson treated plaintiff at the High Desert Community Care Clinic between August 18, 2005, and August 2, 2007. A.R. 289-96, 361-74.

4

hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  A.R. 376-77.  Dr. Wilson also opined plaintiff is not a malingerer and her impairments would cause plaintiff to miss three or more work days a month.  A.R. 377.

On April 28, 2007, Dr. Goldman reexamined plaintiff, attempted to administer psychological testing, and diagnosed plaintiff with malingering and a depressive disorder, not otherwise specified.  A.R. 351-57.  Dr. Goldman again found plaintiff did not make an adequate effort on the tasks presented her, the psychological test results were not valid, and "[h]er performance reflects that she is attempting to simulate cognitive impairment."  A.R. 353-54.  Dr. Goldman explained:

> [plaintiff's] functional limitations were unable to be accurately assessed due to malingering.  Scores on the Bender Gestalt test placed her functioning in the average to low average range and reflect the absence of organic impairment.  Bender Gestalt scores also significantly differ from scores obtained on other measures at the time of this evaluation.  Adaptive functioning was inconsistent with obtained scores.  [Plaintiff] drives a car and reportedly holds a drivers license.  She manages her own money.  She "works word puzzles" and reads books.  At the time of her evaluation she independently read and completed a history questionnaire.  She provided detailed historical information.  These abilities are not consistent with intelligence and memory scores in the extremely low range as measured by the [Wechsler Adult Intelligence Scale - Third

5

1 |      Edition] and [Wechsler Memory Scale – Third Edition].  The
2 |      [plaintiff] has a history of malingering on a previous
3 |      evaluation . . . and current measures of malingering
4 |      indicate that she is attempting to simulate cognitive
5 |      impairment.

A.R. 355.

At the administrative hearing, William Soltz, Ph.D., a clinical psychologist, opined plaintiff has a depressive disorder, not otherwise specified, A.R. 70-71, 429-37, although Dr. Goldman's consultative examinations showed gross inconsistencies and invalid test results due to plaintiff's clear malingering.  A.R. 431.  Indeed, Dr. Soltz stated that given the extremely low scores on memory malingering testing, see A.R. 303, plaintiff would have to have known the right answer and deliberately picked the wrong one.  A.R. 431. Dr. Soltz further testified that, "[e]ven with a stroke" or a "severe psychiatric disturbance," a test subject should do better than plaintiff did on the memory malingering test.  A.R. 432.  Dr. Soltz opined plaintiff is "mildly" restricted in her activities of daily living, has "mild" difficulty with social functioning and maintaining concentration, persistence or pace, and there have been no episodes of decompensation.  Id.  Dr. Soltz concluded plaintiff is not limited cognitively but should not work in a job with high-intensity interpersonal interactions or where hypervigilance is needed, or at heights or around dangerous machinery.  A.R. 435-36.

//
//

**DISCUSSION**

**III**

This Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff's application for disability benefits to determine whether the Commissioner's findings are supported by substantial evidence and whether he used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Vasquez, 572 F.3d at 591.

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). Here,

plaintiff's disability insured status expired on June 30, 2006, A.R. 14, and she must prove she was either permanently disabled or subject to a condition which became so severe as to disable her prior to that date. Lingenfelter v. Astrue, 504 F.3d 1028, 1033-34 (9th Cir. 2007); Greger v. Barnhart, 464 F.3d 968, 970 (9th Cir. 2006).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with

//

additional regulations.[5]  <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity between the alleged onset of disability to "an undetermined date in 2006 when she testified she resumed working[.]"  (Step One).  The ALJ then found plaintiff has the following severe impairments: controlled diabetes mellitus; controlled hypertension; controlled high cholesterol; status post mild right-sided cerebrovascular accident; mild degenerative arthritis in both hips; right meniscus degeneration; ulnar sensory neuropathy; mild cervical and lumbar spine degenerative disc disease; and a depressive disorder, not otherwise specified (Step Two);[6] however, she does not have an impairment or combination of

---

[5]  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 404.1520a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 404.1520a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 404.1520a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]."  20 C.F.R. § 404.1520a(d)(3), (e)(2).

[6]  In reaching this conclusion, the ALJ found:

9

impairments that meets or equals a Listing. (Step Three). Finally, the ALJ determined plaintiff can perform her past relevant work as a receptionist; therefore, she is not disabled. (Step Four).

**IV**

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (the RFC is "a summary of what the claimant is capable of doing"). Here, the ALJ found plaintiff retains the RFC to perform a limited range of sedentary work,[7] as follows:

> [plaintiff can] lift[] and/or carry[] 10 pounds occasionally or frequently; push[] and/or pull[] consistent with lifting and/or carrying; stand[] and/or walk[] two hours in an eight-hour workday; sit[] for six hours in an eight[-]hour workday; . . . and she must be able to change positions at

---

The [plaintiff] has mild restrictions in her activities of daily living; mild to moderate difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and she has experienced no episodes of decompensation.

A.R. 16.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

> will. [Plaintiff] can occasionally climb stairs, balance, bend, stoop, crouch, kneel, crawl or walk on uneven ground, and is precluded from climbing ladders, ropes, or scaffolds. The [plaintiff] can do frequent fine manipulation or fingering and occasional torquing or twisting with her right hand. She should limit her work to activities not requiring safety operations and/or hypervigilance, and avoid all exposure to fumes, odors, dusts, toxins, gases, and poor ventilation as well as hazardous or fast machinery and unprotected heights. The [plaintiff] should avoid intense interpersonal contact with co-workers, supervisors or the public.

A.R. 16. However, plaintiff contends the ALJ, in making the RFC determination, failed to properly consider plaintiff's mental limitations and improperly rejected a statement from plaintiff's friend, Risa Maxey. There is no merit to these claims.

    **a.   Mental Limitations:**

Plaintiff conclusorily contends that "even though the ALJ found a severe depressive disorder, he failed to properly consider the plaintiff's mental limitations in his [RFC] holding." Jt. Stip. at 9:19-21 (emphasis in original). However, the ALJ specifically included the mental limitations that plaintiff avoid "hypervigilance" and "intense interpersonal contact with co-workers, supervisors or the public[,]" A.R. 16, and this finding is supported by substantial evidence in the record, including the opinions of Drs. Goldman and Soltz. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001);

11

1 Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
2 1999). Since plaintiff does not suggest any further mental
3 limitations the ALJ ignored, the Court finds no merit to this claim.

### b. Lay Witness Testimony:

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Valentine, 574 F.3d at 694. Third party function reports are such competent lay evidence, and are "an important source of information about a claimant's impairments." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999); Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

On May 18, 2005, plaintiff's friend, Risa Maxey, completed a third-party function report about plaintiff, stating, among other things, that plaintiff lived in Maxey's house and "often complains of arm, hand [and] shoulder pain[,]" "occasionally needs help with can openers, and jars[,]" "doesn't have strength in [her] arms/hands" and has difficulty lifting, reaching, standing, stair climbing, using her hands, "writing or attempting to use the computer[,]" turning door knobs, manipulating keys, utilizing household appliances, and doing everyday chores. A.R. 138-45.

The ALJ "considered the claimant's subjective complaints in arriving at the claimant's [RFC]" and found "the statements from [plaintiff's] friends . . . credibly establish no different

12

conclusions" than the RFC determination.  A.R. 21.  In so doing, the ALJ found plaintiff's complaints about her pain and other symptoms "not persuasive or credible[,]" id., and plaintiff does not challenge this finding.  The ALJ also noted "the record includes statements by third parties suggesting that the [plaintiff] may be misrepresenting the degree of limitation present."  Id.  In particular, Maxey telephoned the Social Security Administration and stated plaintiff was no longer living with her, and that she requested that plaintiff leave because plaintiff "was abusing their rules and was very manipulative."  A.R. 150.  Under these circumstances, the ALJ properly assessed Maxey's opinion.  Valentine, 574 F.3d at 694; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

V

"At Step Four, claimants have the burden of showing that they can no longer perform their past relevant work."  Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  To determine whether a claimant has the RFC "to perform [her] past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity."  Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986); Marcia v. Sullivan, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).  "This requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work."  Pinto, 249 F.3d at 845 (citing SSR 82-62).  "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy."  Lewis v. Barnhart,

13

1  281 F.3d 1081, 1083 (9th Cir. 2002); <u>Pinto</u>, 249 F.3d at 845.

3  At the administrative hearing, the ALJ asked vocational expert
4  Corinne Porter the following hypothetical question:

6  > I want you to assume an individual who at all times prior to
7  > May of '06 was between 50 and 55 and who after January of
8  > '07 would have been over 55, has a high school education and
9  > some college, including training as a [Certified Nurse's
10 > Assistant] and a certificate in computer word processing and
11 > data entry.  That individual would be able to lift no more
12 > than 10 pounds occasionally, less than 10 pounds frequently;
13 > could occasionally push and pull, well, the push and pull
14 > should be consistent with the lifting and carrying, but
15 > could only be done occasionally with the right upper
16 > extremity.  The person could stand or walk for two hours out
17 > of an eight-hour day, sit for six hours out of an eight-hour
18 > day, would be able to change positions at will.  The person
19 > could climb stairs occasionally, but could not climb
20 > ladders, ropes, and scaffolding, could otherwise balance,
21 > bend or stoop, kneel, crouch, or crawl on an occasional
22 > basis with the need to avoid concentrated exposure to
23 > extremes of heat and cold, could not work with vibratory
24 > tools and cannot work around hazardous or fast-paced
25 > machinery.  ***The individual should not do jobs that require***
26 > ***safety operations or hypervigilance and should not be in***
27 > ***jobs involving intense interpersonal contact***.  Would that
28 > individual be able to do any of the claimant's past relevant

14

work?

A.R. 465-66 (emphasis added).  In response, the vocational expert testified plaintiff could work as a data entry operator and a receptionist.  A.R. 466.  The ALJ then asked the vocational expert:

> [I]f [we] take all of those but we modify it further by limiting her torquing with the right upper extremity to occasional and also to just frequent fine manipulation with the right upper extremity, would she still be able to do her past relevant work?

Id.  The vocational expert responded that such an individual could work as a receptionist, but could not do data entry.  Id.

Plaintiff contends the ALJ's Step Four determination is not supported by substantial evidence because the ALJ "failed to consider the actual mental requirements of plaintiff's past relevant work as a receptionist[,]" as required under Social Security Ruling ("SSR")[8] 82-62.[9]  Jt. Stip. at 3:12-6:8, 8:26-9:7.  The Court disagrees.  The

---

[8] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).  However, they do not have the force of law, Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996), although once published, they are binding upon ALJs and the Commissioner.  Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001).

[9] SSR 82-62 requires any decision finding the claimant has the capacity to perform her past relevant work include "[a]

15

ALJ's Step Four determination that plaintiff can perform her past relevant work as a receptionist is based on the vocational expert's testimony about the nature of the work of a receptionist as generally performed and the vocational expert's opinion that a person of plaintiff's age, education, work experience and the RFC the ALJ set forth could perform the work of a receptionist, Dictionary of Occupational Titles ("DOT") no. 237.367-038.[10]  A.R. 21-22, 464-66. The ALJ can comply with the requirements of SSR 82-62 by relying on a vocational expert's opinion,[11] Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003); see also Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) ("The vocational expert . . . 'translates . . . factual scenarios into realistic job market probabilities' by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of 'not disabled.'" (citation omitted)), and that opinion is substantial evidence supporting the ALJ's Step Four determination that plaintiff can perform her past relevant work.

---

finding of fact as to the physical and mental demands of the past job/occupation."  SSR 82-62, 1982 WL 31386, *1, *4 (S.S.A.).

[10]  The DOT is the Commissioner's primary source of reliable vocational information.  Johnson v. Shalala, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995).

[11]  In any event, since plaintiff does not "point out any way in which the [RFC] assigned to [her] by the ALJ was in fact inconsistent with the . . . demands of plaintiff's past relevant work as a [receptionist,] . . . any error by the ALJ at step four was harmless."  Awad v. Astrue, 2009 WL 2242356, *8 (C.D. Cal.); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

1      The ALJ found plaintiff was limited to "frequent fine
2 manipulation or fingering and occasional torquing or twisting with her
3 right hand."  A.R. 16.  The plaintiff contends, however, that the ALJ
4 failed to consider these limitations in making the Step Four
5 determination that she can perform her past relevant work, arguing the
6 job of receptionist requires "frequent handling," which is
7 inconsistent with "occasional torquing or twisting."  Jt. Stip. at
8 14:11-15:11, 16:6-10; see also U.S. Dep't of Labor, Selected
9 Characteristics of Occupations Defined in the Revised Dictionary of
10 Occupational Titles ("Selected Characteristics"), 336 (1993)
11 (receptionist position requires frequent handling and occasional
12 fingering).  Yet, the plaintiff cites no authority for her contention
13 that "frequent handling" is inconsistent with her limitation to
14 "occasional torquing or twisting with her right hand."  To the
15 contrary, the vocational expert testified that "handling and torquing
16 are not the same" and while the receptionist position requires
17 frequent handling, it does **not** require more than occasional (from zero
18 to 1/3 of the time) torquing.  A.R. 472-74; see also Selected
19 Characteristics, Appendix C, C-3 (1993) (defining "occasionally" as
20 "[a]ctivity or condition exists up to 1/3 of the time").  Therefore,
21 plaintiff's contention is without merit.
22
23      Finally, plaintiff contends the ALJ's hypothetical question to
24 the vocational expert was incomplete because it failed to set out her
25 mental limitations.  Jt. Stip. at 16:12-17:24, 18:10-14.  There is no
26 merit to this claim.  Once again, plaintiff fails to identify those
27 mental limitations she refers to, and "[t]he hypothetical that the ALJ
28 posed to the [vocational expert] contained all of the limitations that

1 | the ALJ found credible and supported by substantial evidence in the
2 | record.  The ALJ's reliance on testimony the [vocational expert] gave
3 | in response to the hypothetical therefore was proper." <u>Bayliss v.</u>
4 | <u>Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005); <u>Stubbs-Danielson v.</u>
5 | <u>Astrue</u>, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  Therefore, plaintiff
6 | has not her burden of proving she is unable to perform her past
7 | relevant work.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: September 14, 2009            /s/ Rosalyn M. Chapman
                                    ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

R&R-MDO\08-0658.mdo
9/14/09

18